**Hearing Date and Time:  April 7, 2009, at 10:00 a.m. ET**
**Response Deadline:  April 2, 2009, at 5:00 p.m. ET**

David Neier (DN 5391)
Carey D. Schreiber (CS 3896)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

and

Daniel J. McGuire (admitted *pro hac vice*)
Mindy D. Cohn (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

*Counsel for the Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| Ziff Davis Media Inc., *et al.*,[1] | Case No. 08-10768 (BRL) |
| Reorganized Debtors. | Jointly Administered |

## NOTICE OF HEARING ON THE REORGANIZED DEBTORS' MOTION FOR AN ORDER APPROVING THE SETTLEMENT BETWEEN THE REORGANIZED DEBTORS AND ENTERPRISE MEDIA GROUP, INC.

**PLEASE TAKE NOTICE** that on March 27, 2009, the above-captioned reorganized debtors (collectively, the "Reorganized Debtors") filed The Reorganized Debtors' Motion for an Order Approving the Settlement Between the Reorganized Debtors and Enterprise Media Group, Inc. (the "Motion").

---

[1]  The Reorganized Debtors in these cases are:  Ziff Davis Media Inc.; Ziff Davis Holdings Inc.; Ziff Davis Internet Inc.; Ziff Davis Publishing Inc.; and Ziff Davis Publishing Holdings Inc.

**PLEASE TAKE FURTHER NOTICE** that on **April 7, 2009, at 10:00 a.m.**, a hearing on the Motion will be held before the Honorable Burton R. Lifland, United States Bankruptcy Judge for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton U.S. Customs House, One Bowling Green, New York, New York 10004-1408, to consider the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that in accordance with the Bankruptcy Court's Order Establishing Certain Notice, Case Management, and Administrative Procedures entered March 10, 2008, objections, if any, to the relief requested in the Motion must be made in writing and filed with the Bankruptcy Court with a copy to chambers, together with proof of service thereof, such that the same is received by the undersigned counsel not later than **April 2, 2009, at 5:00 p.m. prevailing Eastern time** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Motion has been properly filed and served by the Objection Deadline, the Bankruptcy Court may enter an order granting the relief requested therein without any further notice.

CHI:2228937.3

Dated:  March 27, 2009                    /s/ Daniel J. McGuire
       New York, New York              Daniel J. McGuire (admitted *pro hac vice*)
                                       Mindy D. Cohn (admitted *pro hac vice*)
                                       WINSTON & STRAWN LLP
                                       35 West Wacker Drive
                                       Chicago, Illinois  60601
                                       Telephone:  (312) 558-5600
                                       Facsimile:  (312) 558-5700

and

David Neier (DN 5391)
Carey D. Schreiber (CS 3896)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

*Counsel for the Reorganized Debtors*

CHI:2228937.3

**Hearing Date and Time:  April 7, 2009, at 10:00 a.m. ET**
**Response Deadline:  April 2, 2009, at 5:00 p.m. ET**

David Neier (DN 5391)
Carey D. Schreiber (CS 3896)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

and

Daniel J. McGuire (admitted *pro hac vice*)
Mindy D. Cohn (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

*Counsel for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Ziff Davis Media Inc., *et al.*,[1] | Case No. 08-10768 (BRL) |
| Reorganized Debtors. | Jointly Administered |

**THE REORGANIZED DEBTORS' MOTION**
**FOR AN ORDER APPROVING THE REORGANIZED DEBTORS'**
**SETTLEMENT WITH ENTERPRISE MEDIA GROUP, INC.**

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors")

request the entry of an order, pursuant to the Reorganized Debtors' Second Amended Joint

Chapter 11 Plan of Reorganization Dated as of May 6, 2008 [Docket No. 285] (the "Plan"),

approving the Reorganized Debtors' settlement (the "Settlement") with Enterprise Media Group,

---

[1]    The Reorganized Debtors in these cases are:  Ziff Davis Media Inc.; Ziff Davis Holdings Inc.; Ziff
       Davis Internet Inc.; Ziff Davis Publishing Inc.; and Ziff Davis Publishing Holdings Inc.

CHI:2228937.3

Inc. ("<u>Enterprise Media</u>").[2]  In support of this Motion, the Reorganized Debtors respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and Section 12.01(p) of the Plan.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The predicates for the relief sought herein are Sections 3.08 and 8.05 of the Plan.

## Introduction

3.      On March 5, 2008 (the "<u>Petition Date</u>"), each of the Reorganized Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An official committee of unsecured creditors was appointed on March 14, 2008.  The Reorganized Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

4.      By order dated June 17, 2008 (the "<u>Confirmation Order</u>"), the Court confirmed the Plan.  The Plan became effective on July 1, 2008.

## The Dispute Between the Reorganized Debtors and Enterprise

5.      On June 20, 2007, Ziff Davis Media Inc. ("<u>Ziff Davis Media</u>"), Ziff Davis Development Inc., Ziff Davis Internet Inc., Ziff Davis Publishing Holdings Inc. and Ziff Davis Publishing Inc. (collectively, "<u>Seller</u>") executed a Purchase and Sale Agreement (the "<u>Purchase and Sale Agreement</u>") to sell, transfer and assign all of their right, title and interest in the Seller's Enterprise Group business (the "<u>Enterprise Business</u>") and assign certain related liabilities to Enterprise Media for an aggregate cash purchase price of approximately $150 million, plus up to an additional $10 million payable under certain circumstances.

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

CHI:2228937.3

6.     The Enterprise Business was comprised of three publications, eWEEK, CIO Insight and Baseline; 17 Internet sites affiliated with these brands and a number of vertical platform and community sites for readers; over forty-five weekly eNewsletters; eSeminars, which produce live interactive webcasts; the Ziff Davis Web Buyers Guide, a searchable online directory of technology products, vendors and white papers; the custom solutions research tools unit; and contract publishing, which produces custom magazines, white papers, case studies and other sales and marketing collateral for customers.

7.     The closing of the transaction occurred on July 31, 2007.  As a result of the transaction, Enterprise Media (i) paid over $5 million on behalf of Seller for certain transaction closing costs; (ii) paid Ziff Davis Media approximately $128 million in cash (subject to certain adjustments); (iii) assumed certain liabilities related to the Enterprise Business; (iv) placed $2 million into a working capital escrow account; and (v) placed $15 million into an indemnity escrow account (the "Indemnity Escrow Account").

8.     The Indemnity Escrow Account was created for the benefit of Enterprise Media to secure Enterprise Media against the contingent liabilities under the Sale and Purchase Agreement.

9.     Contemporaneously with closing, the Seller and Enterprise Media entered into that certain Indemnity Escrow Agreement dated as of July 31, 2007 (the "Escrow Agreement") which, together with the Purchase and Sale Agreement, governs disbursements from the Indemnity Escrow Account.  The current balance of the Indemnity Escrow Account is approximately $15,338,511 (the "Escrow Funds").  The Purchase and Sale Agreement has an arbitration provision that requires the parties to arbitrate any disputes regarding the Escrow Funds.

3

10.    On June 2, 2008, Enterprise Media filed Claim No. 186 (the "Enterprise Claim") alleging a secured claim against Ziff Davis Media in the amount of at least $15 million based on the matters specified in the Enterprise Claim Letters attached to the Settlement Agreement as Exhibit A.  By the Enterprise Claim, Enterprise Media alleged that it should receive at least $15 million from the Indemnity Escrow because:  (i) the Seller breached certain representations and warranties contained in the Purchase and Sale Agreement and certain related agreements (together, the "Transaction Documents") causing damages in an amount in excess of $15 million; (ii) the Seller committed certain acts or omissions with respect to maintenance and management obligations contained in the Transaction Documents which resulted in disruption to Enterprise Media's business and missed revenue; and (iii) Enterprise Media had incurred, and continued to incur, substantial fees and costs associated with its claims against the Seller, including legal and accounting fees that are reimbursable under the terms of the Transaction Documents.

11.    The Reorganized Debtors dispute Enterprise Media's allegations and believe they are entitled to receive the entire amount of the Escrow Funds.  Under the Plan, any portion of the Escrow Funds recovered by the Reorganized Debtors will be disbursed directly to U.S. Bank National Association, in its capacity as the Collateral Trustee, for distribution to Holders of Allowed Senior Secured Note Claims and MHR Note Claims (together, the "Secured Note Holders").

12.    On August 18, 2008, Enterprise Media timely filed a Demand for Arbitration with the American Arbitration Association (the "AAA") initiating Case No. 13 489 Y 01879 08 (the "Arbitration").  On September 8, 2008, Ziff Davis Media timely filed an Answering Statement and Counterclaim.  On September 22, 2008, Enterprise Media filed an Amended Statement of

CHI:2228937.3

Claim.  On October 10, 2008, Ziff Davis Media filed an Amended Answering Statement and Counterclaim.  The Arbitration is pending.

13.     On December 22, 2008, the Reorganized Debtors sent a letter to Enterprise Media notifying it that the Enterprise Claim was subject to dispute and that the Reorganized Debtors intended to contact Enterprise Media to discuss a consensual resolution.  During the course of the last few months, the Reorganized Debtors and Enterprise Media negotiated a global resolution of the parties' claims against each other.

## The Settlement

14.     The Reorganized Debtors and Enterprise Media have reached a settlement regarding disbursement of the Escrow Funds and resolution of the Enterprise Claim.  A copy of the Settlement Agreement by and between the Reorganized Debtors and Enterprise Media (the "Settlement Agreement") is attached hereto as **Exhibit A**.

15.     Under the Settlement Agreement, the Escrow Funds will be disbursed as follows:  (i) the sum of (x) $3.5 million (the "Enterprise Amount") plus (y) all of the interest and income earned on the Enterprise Amount through the date on which the Enterprise Amount is released from the Indemnity Escrow Account, shall be distributed from the Indemnity Escrow Account to Enterprise Media; (ii) $520,000 of the funds in the Indemnity Escrow Account shall be distributed to Ziff Davis Media to reimburse it for its reasonable fees and expenses incurred in connection with the Arbitration; and (iii) the remainder of the funds in the Indemnity Escrow shall be distributed to the Collateral Trustee in accordance with the terms of the Joint Letter of Direction for distribution to the Secured Note Holders.

16.     The Settlement Agreement further provides that the Enterprise Claim shall be disallowed, and the Arbitration shall be dismissed and terminated with each party to pay its own costs and fees.

CHI:2228937.3

## Relief Requested

17.    The Reorganized Debtors request entry of an order approving the Settlement. Approval of the Settlement will resolve expensive and protracted litigation regarding disbursement of the Escrow Funds.    It will allow the Reorganized Debtors to complete distributions to the Secured Note Holders in accordance with the Plan, reimburse the Reorganized Debtors for their costs incurred in defending the Arbitration and finalizing this settlement and prevent the Reorganized Debtors from incurring additional expense in defending against Enterprise Media's claims.    In addition, it will extinguish Enterprise Media's $15 million secured claim filed against the Reorganized Debtors' chapter 11 estates.    Accordingly, the Settlement is in the best interests of all parties in interests and should be approved.

## Basis for Relief

18.    The Plan provides that the Reorganized Debtors have the exclusive right to file objections to and resolve Claims filed against the estates.    Plan Section 8.05.[3]    In determining whether to approve a settlement of a claim, the court must make an independent determination that the settlement is fair and reasonable.    Nellis v. Shugrue, 165 B.R. 115, 122-23 (S.D.N.Y. 1993).    The court may consider the opinions of the trustee or debtor in possession that the settlement is fair and reasonable.    Id.; In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993).    In addition, the court may exercise its discretion "in light of the general public policy favoring settlements."    In re Hibbard Brown & Co., 217 B.R. 41, 46 (Bankr. S.D.N.Y.

---

[3]    Bankruptcy Rule 9019 does not apply in the context of a settlement following confirmation of a chapter 11 plan.    *See In re COHO Energy, Inc.*, 2004 WL 258222 (N.D. Tex. 2004) (post confirmation the bankruptcy court derives its authority from the confirmed plan, not the Bankruptcy Code or Bankruptcy Rules); *In re Gardner*, Case No. 87-10109, Adversary No. 90-1005 (Bankr. S.D. Feb. 15, 1991)(Rule 9019 does not apply post confirmation in a chapter 12 case).    Accordingly, Section 8.05 of the Plan more properly governs the relief sought herein.

CHI:2228937.3

1998); see Shugrue, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process.").

19.     In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983) (internal quotations omitted); see Purofied Down Prods., 150 B.R. at 522 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation.").

20.     "The 'reasonableness' of a settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not fraud or collusion." In re Ionosphere Clubs, Inc., 156 B.R. at 426-27.

21.     In this case, the Reorganized Debtors submit that the Settlement is fair, equitable, reasonable, and in the best interest of their chapter 11 estates. The Settlement is fair, equitable and reasonable because it is at the lower range of probable results if the parties litigated the Arbitration to conclusion. The settlement is in the best interest of the estates because it resolves one of the largest claims asserted against the Reorganized Debtors' estates and it facilitates the Reorganized Debtors' fulfillment of their obligations under the Plan including completion of distributions to the Secured Note Holders. In addition, the Settlement reimburses the Reorganized Debtors for their expenses incurred in connection with the Arbitration and alleviates the need for the Reorganized Debtors to incur additional expense in connection with the Arbitration.

CHI:2228937.3

22.     In short, the Settlement allows the Reorganized Debtors to distribute approximately $11 million in cash to the Secured Note Holders and to move substantially closer to completing Plan distributions and closing these chapter 11 cases.  The Secured Note Holders support this Motion.   They have known the terms of the Settlement for several weeks. Moreover, they have advised the Reorganized Debtors that they support a prompt resolution of the Arbitration to expedite their receipt of final distributions under the Plan.

23.     For the foregoing reasons, the Reorganized Debtors respectfully request that the Court approve the Settlement.

## Notice

24.     In accordance with the "Order Establishing Certain Notice, Case Management and Administrative Procedures" dated March 10, 2008, this Motion has been served upon the Core Group, the 2002 List and affected parties.  The Reorganized Debtors submit that no other or further notice is necessary.

## No Prior Request

25.     No prior request for the relief requested herein has been filed in this or any other court.

CHI:2228937.3

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an Order, substantially in the form of the proposed order attached hereto as **Exhibit B**: (a) approving the Settlement and authorizing the Reorganized Debtors to enter into the Settlement Agreement; (b) shortening the amount of notice required for the hearing on this Motion; and (c) granting the Reorganized Debtors such further relief as may be equitable and just.

Dated: March 27, 2009
New York, New York

/s/ Daniel J. McGuire
Daniel J. McGuire (admitted *pro hac vice*)
Mindy D. Cohn (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

-and-

David Neier (DN 5391)
Carey D. Schreiber (CS 3896)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

*Counsel for the Reorganized Debtors*

CHI:2228937.3

# **EXHIBIT A**

Settlement Agreement

CHI:2228937.3

EXECUTION VERSION

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "<u>Agreement</u>"), dated as of March 27, 2009, sets forth the terms of the Agreement by and between Ziff Davis Holdings Inc. ("<u>Ziff Davis Holdings</u>"), Ziff Davis Media Inc. ("<u>Ziff Davis Media</u>"), Ziff Davis Internet Inc. ("<u>Ziff Davis Internet</u>"), Ziff Davis Publishing Holdings Inc. ("<u>Ziff Davis Publishing Holdings</u>") and Ziff Davis Publishing Inc. ("<u>Ziff Davis Publishing</u>," collectively, with Ziff Davis Holdings, Ziff Davis Media, Ziff Davis Internet and Ziff Davis Publishing Holdings, the "<u>Ziff Davis Entities</u>") on the one hand and Enterprise Media Group, Inc. ("<u>Enterprise Media</u>") on the other.  The Ziff Davis Entities and Enterprise Media shall sometimes collectively be referred to herein as "the Parties."  The Parties hereby agree as follows:

## RECITALS

WHEREAS, on June 20, 2007, Ziff Davis Media, Ziff Davis Development Inc. ("<u>Ziff Davis Development</u>"), Ziff Davis Internet, Ziff Davis Publishing Holdings and Ziff Davis Publishing (collectively, the "<u>Seller</u>") executed a purchase and sale agreement (the "<u>Purchase and Sale Agreement</u>") to sell, transfer and assign all of their right, title and interest to certain assets and assign certain liabilities to Enterprise Media for an aggregate cash purchase price of approximately $150 million, plus certain other contingent amounts;

WHEREAS, the closing of this transaction occurred on July 31, 2007 and Enterprise Media (i) paid over $5 million on behalf of Seller for certain transaction closing costs; (ii) paid Ziff Davis Media approximately $128 million in cash (subject to certain adjustments); (iii) assumed certain liabilities related to the Enterprise Group (defined in the Purchase and Sale Agreement); (iv) placed $2 million into a working capital escrow account; and (v) placed $15 million into an indemnity escrow account (the "<u>Indemnity Escrow</u>") established pursuant to the terms of the Indemnity Escrow Agreement (as defined in the Purchase and Sale Agreement);

WHEREAS, the Purchase and Sale Agreement and the Indemnity Escrow Agreement together govern the distribution of funds from the Indemnity Escrow;

WHEREAS, on March 5, 2008 (the "<u>Petition Date</u>"), Ziff Davis Holdings, Ziff Davis Intermediate Holdings Inc. ("<u>Ziff Davis Intermediate</u>"), Ziff Davis Media, Ziff Davis Development, Ziff Davis Internet, Ziff Davis Publishing Holdings and Ziff Davis Publishing (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>");

WHEREAS, on April 22, 2008, the Bankruptcy Court entered the Order Establishing Bar Dates for Filing Proofs of Prepetition Secured and Unsecured Claims and § 503(b)(9) Administrative Expense Claims and Approving Form and Manner of Notice Thereof [Docket No. 162];

WHEREAS, on June 2, 2008, Enterprise Media filed Claim No. 186 (the "<u>Enterprise Claim</u>") alleging secured claims against Ziff Davis Media in the amount of at least $15 million based on the matters specified in the Enterprise Claim Letters (as defined below);

WHEREAS, by the Enterprise Claim, Enterprise Media alleged that it should receive at least $15 million from the Indemnity Escrow because, among other things: (i) the Debtors breached certain representations and warranties contained in the Purchase and Sale Agreement and certain related agreements (together, the "Transaction Documents") causing damages in excess of $15 million; (ii) the Debtors committed certain acts or omissions with respect to maintenance and management obligations contained in the Transaction Documents which resulted in disruption to Enterprise Media's business and missed revenue; and (iii) Enterprise Media had incurred, and continued to incur, substantial fees and costs associated with its claims against the Debtors, including legal and accounting fees that are reimbursable under the terms of the Transaction Documents, in each case as set forth in greater detail in the indemnity claim letters attached hereto as **Exhibit A** (the "Enterprise Claim Letters");

WHEREAS, on June 17, 2008 the Bankruptcy Court entered an order confirming the Ziff Davis Entities' Second Amended Joint Chapter 11 Plan of Reorganization Dated as of May 6, 2008 (as confirmed, the "Plan");

WHEREAS, the Ziff Davis Entities have advised Enterprise Media that they intend to object to the Enterprise Claim on the ground that the Ziff Davis Entities did not breach any obligations under the Purchase and Sale Agreement, the Indemnity Escrow Agreement or any related agreement, and the Ziff Davis Entities are entitled to receive the entire amount held in the Indemnity Escrow;

WHEREAS, on August 18, 2008, Enterprise Media filed a Demand for Arbitration with the American Arbitration Association (the "AAA") which arbitration (the "Arbitration") is pending before the AAA as Case No. 13 489 Y 01879 08;

WHEREAS, on September 8, 2008, Ziff Davis Media filed an Answering Statement and Counterclaim in the Arbitration;

WHEREAS, on September 22, 2008, Enterprise Media filed an Amended Statement of Claim in the Arbitration;

WHEREAS, on October 10, 2008, Ziff Davis Media filed an Amended Answering Statement and Counterclaim in the Arbitration; and

WHEREAS, to avoid the costs and risks associated with arbitration and litigation concerning the Enterprise Claim and the Arbitration, the Parties have agreed to settle all disputes relating to the representations and warranties set forth in the Purchase and Sale Agreement, the terms of the Indemnity Escrow Agreement, the Indemnity Escrow and the Enterprise Claim arising through and including the Approval Date (defined below) on the terms set forth herein.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  Recitals Incorporated. The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full in, and made a part of, this Agreement.

2.    <u>Settlement Motion</u>.  Within one business day after the date hereof, the Ziff Davis Entities will file a motion with the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Settlement Motion</u>") seeking an order of the Bankruptcy Court in form and substance acceptable to the Parties (the "<u>Approval Order</u>") to approve this Agreement and grant related relief.  The date that the Approval Order is entered by the Bankruptcy Court is referred to herein as the "<u>Approval Date</u>."

3.    <u>Distribution of the Indemnity Escrow</u>.  The Parties hereby agree that the amounts held in the Indemnity Escrow shall be distributed as follows:  (i) the sum of (x) Three Million Five Hundred Thousand Dollars ($3,500,000) of the funds in the Indemnity Escrow (the "<u>Enterprise Amount</u>") <u>plus</u> (y) all of the interest and income earned on the Enterprise Amount through the date on which the Enterprise Amount is released from the Indemnity Escrow, shall be distributed from the Indemnity Escrow to Enterprise Media in accordance with the terms of the Joint Letter of Direction (defined below); (ii) Five Hundred Twenty Thousand Dollars ($520,000) of the funds in the Indemnity Escrow shall be distributed to Ziff Davis Media to reimburse it for its reasonable fees and expenses incurred in connection with the Arbitration; and (iii) the remainder of the funds in the Indemnity Escrow shall be distributed to the Collateral Trustee (as defined in the Plan) in accordance with the terms of the Joint Letter of Direction for distribution to holders of Senior Secured Note Claims and MHR Note Claims (each as defined in the Plan).

4.    <u>Joint Letter of Direction</u>.  Within one business day after the Approval Date, the Parties will execute and deliver a joint letter of direction (the "<u>Joint Letter of Direction</u>") in substantially the form of the letter attached hereto as **Exhibit B** and deliver it to the Escrow Agent (as defined in the Indemnity Escrow Agreement) in accordance with the terms of the Indemnity Escrow Agreement.

5.    <u>Disallowance of Enterprise Claim/Dismissal of Arbitration</u>.  The Parties agree that as of the Approval Date and upon the distribution of funds to, and receipt of funds by, Enterprise Media, pursuant to Sections 3 and 4 hereof, the Enterprise Claim shall be deemed disallowed in its entirety and that the Ziff Davis Entities' claims agent may revise the official claims register to expunge the Enterprise Claim.  The Parties agree that, within five business days following the Approval Date, Enterprise Media and Ziff Davis Media will file a joint letter of termination with the AAA, in substantially the form attached hereto as **Exhibit C**, terminating the Arbitration with prejudice.  Each party shall bear its own costs and fees including the fees of the arbitrator appointed by such party.

6.    <u>Transition Services</u>.  Ziff Davis Media shall continue to provide to Enterprise Media, or permit Enterprise Media to continue to utilize (as the case may be), transition services pursuant to the Transition Services Agreement by and between Ziff Davis Media and Enterprise Media dated as of July 31, 2007 (as amended, modified, supplemented or restated from time to time) in the areas of facilities management and corporate information technology management for Enterprise Media's New York and San Francisco offices (the "<u>Transition Services</u>") until Enterprise Media indicates that such services are no longer required.  In connection with the Transition Services, Ziff Davis Media shall grant Enterprise Media access to the Pivotal and Great Plains systems as needed for the transition.  In exchange for the Transition Services, Enterprise Media shall pay Ziff Davis Media $30,000.00 (the "<u>TSA Payment</u>") on or before the first day of each month for which Transition Services are to be performed.

7.      In connection with the settlement contemplated by this Agreement, Ziff Davis Media shall continue to provide, or permit Enterprise Media to continue to utilize (as the case may be), those services set forth on Annex I hereto (the "Telephone Services"), in each case, to the same extent as such services are provided by Ziff Davis Media or utilized by Enterprise Media (as the case may be) as of immediately prior to the date hereof.  Until July 31, 2009, for as long as Enterprise Media continues to make the TSA Payment, Ziff Davis Media shall provide Enterprise Media with the Telephone Services for no additional charge; provided however, that, in the event that Enterprise Media ceases to make the TSA Payment, Ziff Davis Media shall provide Enterprise Media with the Telephone Services for $2,500.00 per month due on or before the first day of each month for which Telephone Services are to be utilized by Enterprise Media. To the extent that Enterprise Media requests, and Ziff Davis Media agrees to provide, any additional transition services not otherwise contemplated by this Agreement, the parties shall negotiate, in good faith, an appropriate adjustment to the TSA Payment.

8.      Ziff Davis Media hereby (a) acknowledges and agrees that money damages would not be a sufficient remedy for any breach of Sections 6 or 7 above and that Enterprise Media shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and (b) agrees to waive any requirement for the security or posting of any bond in connection with such remedy.  The foregoing remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to Enterprise Media.

9.      <u>Releases</u>.

      a.      As of the Approval Date, in consideration for the mutual covenants, promises and obligations contained herein, Enterprise Media, on behalf of itself, its Affiliates (defined below) and its and their respective past and present agents, controlling persons, shareholders, Affiliates, subsidiaries, related or parent entities, representatives, members, managers, officers, directors, employees, administrators, personal representatives, successors and assigns (collectively, the "Representatives"), hereby waives, releases and discharges the Ziff Davis Entities, their respective Affiliates (including, but not limited to, the Debtors), and each of their respective Representatives and attorneys from any and all claims, demands, causes of action, accounts, liens, debts and liabilities of any kind arising under or related to the Indemnity Escrow, the Enterprise Claim, the representations and warranties set forth in the Purchase and Sale Agreement or the terms of the Indemnity Escrow Agreement, whether in law or in equity, direct or indirect, known or unknown, previously asserted or not yet asserted, except for such rights and claims that are expressly granted, preserved, permitted or subsequently arise hereunder.  As used herein, "Affiliate" means, with respect to any person or entity, any other person or entity that directly or indirectly controls, is controlled by, or is under common control with, such person or entity.

      b.      As of the Approval Date, in consideration for the mutual covenants, promises and obligations contained herein, the Ziff Davis Entities, on behalf of themselves, their Affiliates and their respective Representatives,

hereby waive, release and discharge Enterprise Media and its respective Affiliates, and each of their respective Representatives and attorneys from any and all claims, demands, causes of action, accounts, liens, debts and liabilities of any kind arising under or related to the Indemnity Escrow, the Enterprise Claim, the representations and warranties set forth in the Purchase and Sale Agreement or the terms of the Indemnity Escrow Agreement, whether in law or in equity, direct or indirect, known or unknown, previously asserted or not yet asserted, except for such rights and claims that are expressly granted, preserved, permitted or subsequently arise hereunder.

10.    <u>Bankruptcy Court Approval</u>.  This Agreement remains subject in all respects to approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, in the event that the Approval Order is not obtained within forty (40) days following the date hereof, (i) this Agreement and all of the obligations hereunder (other than the provisions of this sentence) shall automatically terminate and be of no further force or effect, (ii) the Parties shall be returned to the positions they occupied immediately before this Agreement was executed, and (iii) any of the Parties may notify the AAA that the Agreement has terminated and reinstate the Arbitration.

11.    <u>Notice</u>:  Any notice, request, demand or other communication given under this Agreement will be in writing and will be deemed sufficiently given:

a.    Upon the date received by the intended recipient if delivered by hand or overnight courier, provided confirmation of receipt is retained.

b.    If the sender so elects, effective three days following the date deposited in the United States mail, certified with return receipt requested, postage prepaid, addressed to the recipient as follows:

To the Ziff Davis Entities:        Ziff Davis Media Inc.
                                  28 East 28th Street
                                  New York, New York 10016
                                  Attn:  General Counsel
                                  Telephone:  (212) 503-3500

With a copy to:                   Winston & Strawn LLP
                                  35 West Wacker Drive
                                  Chicago, Illinois  60601
                                  Attn:  Daniel J. McGuire
                                  Telephone:  (312) 558-6154
                                  E-mail:  dmcguire@winston.com

To Enterprise Media:              Enterprise Media Group, Inc.
                                  c/o Insight Venture Management, L.L.C.
                                  680 Fifth Avenue, 8th Floor
                                  New York, New York 10019
                                  Attn:  Lawrence Handen

Telephone:  (212) 230-9200
E-mail:  handen@insightpartners.com

With a copy to:          O'Melveny & Myers LLP
                         7 Times Square
                         New York, New York 10036
                         Attn:  William J. Sushon
                         Telephone:  (212) 326-2000
                         E-mail:  wsushon@omm.com

c.    Either Party may advise the other of any change in address or designated person to receive such notice as provided above.

12.    <u>Severability</u>.  If any provision of this Agreement is adjudicated invalid and unenforceable by any court of competent jurisdiction or deemed by an applicable regulatory authority or governing body to be invalid and unenforceable under any statute, regulation, ordinance, executive agreement, or other rule of law, such provision will be deleted or modified, at the election of the Parties, but only to the extent necessary to comply with such ruling, statute, regulation, ordinance, agreement or rule, and the remaining provisions of this Agreement will remain in full force and effect, provided that such deletion or modification does not materially and adversely affect the rights or obligations of any party hereto.

13.    <u>Representations and Warranties</u>.

a.    Subject to entry of the Approval Order, the Ziff Davis Entities represent and warrant that (i) they have the power and authority to execute this Agreement, without obtaining the consent or approval of any other person or entity; and (ii) this Agreement has been duly authorized, executed and delivered by the Ziff Davis Entities and is enforceable against the Ziff Davis Entities in accordance with its terms.

b.    Enterprise Media represents and warrants that (i) it has the power and authority to execute this Agreement, without obtaining the consent or approval of any other person or entity; and (ii) this Agreement has been duly authorized, executed and delivered by Enterprise Media and is enforceable against Enterprise Media in accordance with its terms.

14.    <u>Choice of Law</u>.  This Agreement shall be governed by the internal laws of the State of New York and the applicable provisions of the Bankruptcy Code, and shall be construed and interpreted in accordance with the laws of the State of New York, notwithstanding its conflict of laws principles or any other rule, regulation or principle that would result in the application of any other state's law.

15.    <u>Authorization</u>.  Each individual signing this Agreement on behalf of any party represents and warrants that he/she has full authority to do so.

16.    <u>Enforcement</u>.  In the event that legal action is instituted between the Parties to enforce this Agreement, the prevailing party shall be entitled to recover from the losing party all

costs and expenses of litigation, including without limitation, court costs and reasonable attorneys' fees.

17.    <u>Binding Nature</u>.   The Parties acknowledge that each and every covenant and agreement contained herein shall inure to the benefit of, and be binding upon, each of the Parties' agents, subsidiaries, employees, officers, directors, assigns and successors in interest.

18.    <u>Entire Agreement</u>.   The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior and contemporaneous agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Agreement.

19.    <u>Amendment</u>.   The Parties agree that this Agreement may not be amended, modified or varied in its terms by an oral agreement or representation or otherwise, except by an instrument in writing of subsequent date hereof executed by all of the Parties.

20.    <u>Waiver</u>.   The Parties agree that no breach of any provision hereof may be waived except in writing.   The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

21.    <u>Third Parties</u>.   Nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the Parties, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party to any party to this Agreement, nor shall any provision give any third party any right of subrogation or action over or against any party to this Agreement.

22.    <u>Counterparts</u>.   The parties agree that this Agreement may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, and all such counterparts taken together shall constitute one and the same Agreement.   This Agreement may be signed and transmitted by electronic mail or facsimile, either of which shall be deemed to have the full force and effect as an original signature.

23.    <u>Jurisdiction</u>.   The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Agreement.   Each Party consents to the jurisdiction of the Bankruptcy Court to resolve any disputes or controversies between the Parties hereto arising from or related to this Agreement.   Any motion, application or other action or proceeding brought before the Bankruptcy Court to resolve a dispute arising from or related to this Agreement shall be brought on proper notice in accordance with the Bankruptcy Court's Order Establishing Certain Notice, Case Management, and Administrative Procedures entered March 10, 2008, relevant Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court.

24.    <u>Voluntary Nature</u>.   Each party represents and warrants that it has had an opportunity to fully review the provisions of this Agreement with attorneys of its own choice as a result of which the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Agreement; and (b) each Party signing this Agreement is entering this Agreement knowingly, voluntarily and of its own free will.

IN WITNESS WHEREOF, the undersigned have each caused this Agreement to be duly executed and delivered by their respective, duly authorized representatives as of the date first set forth above.

**THE ZIFF DAVIS ENTITIES:**

ZIFF DAVIS MEDIA INC., on its own behalf and on behalf of all of the other Ziff Davis Entities

By: _____

Name: _____

Title: _____

Date: _____

Authorized signatory for all of the Ziff Davis Entities

**ENTERPRISE MEDIA GROUP, INC.**

By: _____

Name: _____

Title: _____

Date: _____

CHI:2240187.1

## EXHIBIT A

Enterprise Claim Letters

## EXHIBIT B

Form of Joint Letter of Direction

CHI:2240187.1

_____ __, 2009

***VIA HAND DELIVERY***

| | |
|---|---|
| Wells Fargo Bank, National Association | Wells Fargo Bank, National Association |
| 45 Broadway | 230 West Monroe Street |
| 14th Floor | Corporate Trust Department, 29th Floor |
| New York, NY  10006 | Chicago, IL  60606 |
| Attn:  Robert Bilodeau | Attn:  Timothy P. Martin |

Re:  Joint Letter of Direction from Enterprise Media Group, Inc. and Ziff Davis Media Inc.

Gentlemen:

Reference is hereby made to the Indemnity Escrow Agreement (the "Escrow Agreement") dated as of July 31, 2007 by and between Wells Fargo Bank , National Association ("Escrow Agent"), Enterprise Media Group, Inc. ("Enterprise Media") and Ziff Davis Media Inc. and certain of its affiliates (collectively, the "Ziff Davis Entities"); the Settlement Agreement (the "Settlement Agreement," a copy of which is attached hereto as **Exhibit A**) dated as of _____ __, 2009 by and between Enterprise Media and the Ziff Davis Entities; and the order (the "Court Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Court") on _____ ___, 2009 approving the Settlement Agreement (the "Court Order," a copy of which is attached hereto as **Exhibit B**).  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Escrow Agreement and the Settlement Agreement.

This joint letter of direction is given as of the ____ day of _____ 2009 by Enterprise Media and the Ziff Davis Entities to the Escrow Agent pursuant to the Indemnity Agreement, the Settlement Agreement and the Court Order.

Enterprise Media and Ziff Davis Media, through their authorized signatories identified on the signature pages hereto, hereby authorize and direct the Escrow Agent to distribute the funds held in the Indemnity Escrow as follows:  (i) $_____ shall be distributed from the Indemnity Escrow to Enterprise Media; (ii) Five Hundred Twenty Thousand Dollars ($520,000) of the funds in the Indemnity Escrow shall be distributed to Ziff Davis Media; and (iii) the remainder of the funds in the Indemnity Escrow shall be distributed to U.S. Bank National Association in its capacity as Collateral Trustee for distribution to holders of Senior Secured Note Claims and MHR Note Claims.

**ZIFF DAVIS MEDIA INC.**

By: _____

Name: _____

Title: _____

Date: _____


**ENTERPRISE MEDIA GROUP, INC.**

By: _____

Name: _____

Title: _____

Date: _____

## EXHIBIT C

Joint Letter of Termination

[OMM Letterhead]

_____ __, 2009

***VIA FACSIMILE AND OVERNIGHT MAIL***

Ms. Janice Jary Antone
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island  02914

> **Re:    Enterprise Media Group, Inc. v. Ziff Davis Media Inc.
> AAA Case No. 13 489 Y 01879 08**

Dear Ms. Antone,

      This letter shall confirm that the parties have settled the above-referenced matter and agree that the arbitration proceeding shall be terminated with prejudice forthwith.  Each party shall bear its own costs and fees including the fees of the arbitrator appointed by such party.

O'MELVENY & MYERS LLP                    WINSTON & STRAWN LLP

By: _____                    By: _____
William J. Sushon                                      Anthony DiSarro
Judd B. Grossman                                     Lina M. Viviano
7 Times Square                                         200 Park Avenue
New York, New York 10036                       New York, New York  10036-6710

*Attorneys for Claimant Enterprise*             *Attorneys for Respondent Ziff Davis Media Inc.*
*Media Group, Inc.*

## ANNEX I

1. Use of the New York and San Francisco Phone Services and Fiber Connection for the period commencing on 4/1/09 and ending on 7/31/09.

2. For the period commencing on 4/1/09 and ending on 7/31/09, use of the Nortel PBX located in the basement of 28 E. 28th Street, New York, New York 10016, currently in use by Ziff Davis Media and their divested properties still residing in the building (including Enterprise Media), and the following services related thereto:
   a. Maintenance of desktop digital handsets in good working condition.
   b. Maintenance of building riser wiring and other structured cabling from the handset to the PBX in the basement.
   c. Maintenance of voice circuits from the PBX to the Public Switched Telephone Network.
   d. Maintenance of the PBX itself.
   e. Reliable routing of inbound and outbound calls to and from the Public Switched Telephone Network.
   f. Assign extension phone numbers from a contiguous range of numbers.
   g. Provision of reliable, redundant voice circuit connections to the telecommunications carrier.
   h. Coordinate telecommunication circuit changes with the telecommunications carrier.
   i. Installation of phone extensions to the desktop, moves and changes when necessary.
   j. Installation of analog (fax) lines where requested.
   k. Timely communication of phone service interruptions including a description of the problem and estimated time to resolution.
   l. Prior communication of scheduled phone service interruptions one week before the event.

3. Ziff Davis Media shall provide Enterprise Media with the contiguous range of phone numbers, and shall:  (i) provide Enterprise Media with written consent to the transition of the number block; and (ii) respond to a designated Enterprise Media employee's reasonable questions regarding the telecom transition for a reasonable period following the completion of the transactions contemplated by this Agreement.

4. Continued use of the fiber connection from the basement at 28 E. 28th Street, New York, New York 10016 up to the 12th floor Enterprise Media office space.

Execution Version

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "<u>Agreement</u>"), dated as of March 27, 2009, sets forth the terms of the Agreement by and between Ziff Davis Holdings Inc. ("<u>Ziff Davis Holdings</u>"), Ziff Davis Media Inc. ("<u>Ziff Davis Media</u>"), Ziff Davis Internet Inc. ("<u>Ziff Davis Internet</u>"), Ziff Davis Publishing Holdings Inc. ("<u>Ziff Davis Publishing Holdings</u>") and Ziff Davis Publishing Inc. ("<u>Ziff Davis Publishing</u>," collectively, with Ziff Davis Holdings, Ziff Davis Media, Ziff Davis Internet and Ziff Davis Publishing Holdings, the "<u>Ziff Davis Entities</u>") on the one hand and Enterprise Media Group, Inc. ("<u>Enterprise Media</u>") on the other.  The Ziff Davis Entities and Enterprise Media shall sometimes collectively be referred to herein as "the Parties."  The Parties hereby agree as follows:

## RECITALS

WHEREAS, on June 20, 2007, Ziff Davis Media, Ziff Davis Development Inc. ("<u>Ziff Davis Development</u>"), Ziff Davis Internet, Ziff Davis Publishing Holdings and Ziff Davis Publishing (collectively, the "<u>Seller</u>") executed a purchase and sale agreement (the "<u>Purchase and Sale Agreement</u>") to sell, transfer and assign all of their right, title and interest to certain assets and assign certain liabilities to Enterprise Media for an aggregate cash purchase price of approximately $150 million, plus certain other contingent amounts;

WHEREAS, the closing of this transaction occurred on July 31, 2007 and Enterprise Media (i) paid over $5 million on behalf of Seller for certain transaction closing costs; (ii) paid Ziff Davis Media approximately $128 million in cash (subject to certain adjustments); (iii) assumed certain liabilities related to the Enterprise Group (defined in the Purchase and Sale Agreement); (iv) placed $2 million into a working capital escrow account; and (v) placed $15 million into an indemnity escrow account (the "<u>Indemnity Escrow</u>") established pursuant to the terms of the Indemnity Escrow Agreement (as defined in the Purchase and Sale Agreement);

WHEREAS, the Purchase and Sale Agreement and the Indemnity Escrow Agreement together govern the distribution of funds from the Indemnity Escrow;

WHEREAS, on March 5, 2008 (the "<u>Petition Date</u>"), Ziff Davis Holdings, Ziff Davis Intermediate Holdings Inc. ("<u>Ziff Davis Intermediate</u>"), Ziff Davis Media, Ziff Davis Development, Ziff Davis Internet, Ziff Davis Publishing Holdings and Ziff Davis Publishing (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>");

WHEREAS, on April 22, 2008, the Bankruptcy Court entered the Order Establishing Bar Dates for Filing Proofs of Prepetition Secured and Unsecured Claims and § 503(b)(9) Administrative Expense Claims and Approving Form and Manner of Notice Thereof [Docket No. 162];

WHEREAS, on June 2, 2008, Enterprise Media filed Claim No. 186 (the "<u>Enterprise Claim</u>") alleging secured claims against Ziff Davis Media in the amount of at least $15 million based on the matters specified in the Enterprise Claim Letters (as defined below);

WHEREAS, by the Enterprise Claim, Enterprise Media alleged that it should receive at least $15 million from the Indemnity Escrow because, among other things:  (i) the Debtors breached certain representations and warranties contained in the Purchase and Sale Agreement and certain related agreements (together, the "Transaction Documents") causing damages in excess of $15 million; (ii) the Debtors committed certain acts or omissions with respect to maintenance and management obligations contained in the Transaction Documents which resulted in disruption to Enterprise Media's business and missed revenue; and (iii) Enterprise Media had incurred, and continued to incur, substantial fees and costs associated with its claims against the Debtors, including legal and accounting fees that are reimbursable under the terms of the Transaction Documents, in each case as set forth in greater detail in the indemnity claim letters attached hereto as **Exhibit A** (the "Enterprise Claim Letters");

WHEREAS, on June 17, 2008 the Bankruptcy Court entered an order confirming the Ziff Davis Entities' Second Amended Joint Chapter 11 Plan of Reorganization Dated as of May 6, 2008 (as confirmed, the "Plan");

WHEREAS, the Ziff Davis Entities have advised Enterprise Media that they intend to object to the Enterprise Claim on the ground that the Ziff Davis Entities did not breach any obligations under the Purchase and Sale Agreement, the Indemnity Escrow Agreement or any related agreement, and the Ziff Davis Entities are entitled to receive the entire amount held in the Indemnity Escrow;

WHEREAS, on August 18, 2008, Enterprise Media filed a Demand for Arbitration with the American Arbitration Association (the "AAA"); and the arbitration between the parties (the "Arbitration") is pending before the AAA as Case No. 13 489 Y 01879 08;

WHEREAS, on September 8, 2008, Ziff Davis Media filed an Answering Statement and Counterclaim in the Arbitration;

WHEREAS, on September 22, 2008, Enterprise Media filed an Amended Statement of Claim in the Arbitration;

WHEREAS, on October 10, 2008, Ziff Davis Media filed an Amended Answering Statement and Counterclaim in the Arbitration; and

WHEREAS, to avoid the costs and risks associated with arbitration and litigation concerning the Enterprise Claim and the Arbitration, the Parties have agreed to settle all disputes relating to the representations and warranties set forth in the Purchase and Sale Agreement, the terms of the Indemnity Escrow Agreement, the Indemnity Escrow and the Enterprise Claim arising through and including the Approval Date (defined below) on the terms set forth herein.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    Recitals Incorporated.  The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full in, and made a part of, this Agreement.

2.     <u>Settlement Motion</u>.  Within one business day after the date hereof, the Ziff Davis Entities will file a motion with the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Settlement Motion</u>") seeking an order of the Bankruptcy Court in form and substance acceptable to the Parties (the "<u>Approval Order</u>") to approve this Agreement and grant related relief.  The date that the Approval Order is entered by the Bankruptcy Court is referred to herein as the "<u>Approval Date</u>."

3.     <u>Distribution of the Indemnity Escrow</u>.  The Parties hereby agree that the amounts held in the Indemnity Escrow shall be distributed as follows:  (i) Three Million Five Hundred Thousand Dollars ($3,500,000) of the funds in the Indemnity Escrow (the "<u>Enterprise Amount</u>") plus all interest and income earned on the Enterprise Amount through the Approval Date, shall be distributed from the Indemnity Escrow to Enterprise Media in accordance with the terms of the Joint Letter of Direction (defined below); (ii) Five Hundred Twenty Thousand Dollars ($520,000) of the funds in the Indemnity Escrow shall be distributed to Ziff Davis Media to reimburse it for its reasonable fees and expenses incurred in connection with the Arbitration; and (iii) the remainder of the funds in the Indemnity Escrow shall be distributed to the Collateral Trustee (as defined in the Plan) in accordance with the terms of the Joint Letter of Direction for distribution to holders of Senior Secured Note Claims and MHR Note Claims (each as defined in the Plan).

4.     <u>Joint Letter of Direction</u>.  Within one business day after the Approval Date, the Parties will execute and deliver a joint letter of direction (the "<u>Joint Letter of Direction</u>") in substantially the form of the letter attached hereto as **Exhibit B** and deliver it to the Escrow Agent (as defined in the Indemnity Escrow Agreement) in accordance with the terms of the Indemnity Escrow Agreement.

5.     <u>Disallowance of Enterprise Claim/Dismissal of Arbitration</u>.  The Parties agree that as of the Approval Date and upon the distribution of funds to, and receipt of funds by, Enterprise Media, pursuant to Sections 3 and 4 hereof, the Enterprise Claim shall be deemed disallowed in its entirety and that the Ziff Davis Entities' claims agent may revise the official claims register to expunge the Enterprise Claim.  The Parties agree that, within five business days following the Approval Date, Enterprise Media and Ziff Davis Media will file a joint letter of termination with the AAA, in substantially the form attached hereto as **Exhibit C**, terminating the Arbitration with prejudice.  Each party shall bear its own costs and fees including the fees of the arbitrator appointed by such party.  Promptly after execution of this Agreement and pending approval of this Agreement by the Bankruptcy Court, the Parties shall make a joint application to the AAA to stay all proceedings in the Arbitration, including an adjournment *sine die* of all existing deadlines.

6.     <u>Transition Services</u>.  Ziff Davis Media shall continue to provide to Enterprise Media, or permit Enterprise Media to continue to utilize (as the case may be), transition services pursuant to the Transition Services Agreement by and between Ziff Davis Media and Enterprise Media dated as of _____ in the areas of facilities management and corporate information technology management for Enterprise Media's New York and San Francisco offices (the "<u>Transition Services</u>") until Enterprise Media indicates that such services are no longer required.  In connection with the Transition Services, Ziff Davis Media shall grant Enterprise Media access to the Pivotal and Great Plains systems as needed for the transition.  In exchange for the Transition Services, Enterprise Media shall pay Ziff Davis Media $30,000.00

(the "TSA Payment") on or before the first day of each month for which Transition Services are to be performed.

7.    In connection with the settlement contemplated by this Agreement, Ziff Davis Media shall continue to provide, or permit Enterprise Media to continue to utilize (as the case may be), those services set forth on Annex I hereto (the "Telephone Services"), in each case, to the same extent as such services are provided by Ziff Davis Media or utilized by Enterprise Media (as the case may be) as of immediately prior to the date hereof.   In the event that Enterprise Media chooses to utilize either corporate information technology management services or facilities management services for either its New York office or its San Francisco office, the parties will agree on an adjusted TSA Payment, and Enterprise Media shall be entitled to receive the Telephone Services until July 31, 2009 for no additional charge except as otherwise provided below.   In the event that Enterprise Media chooses to utilize both corporate information technology management services and facilities management services for both its New York and San Francisco offices, Enterprise Media shall be entitled to utilize the Telephone Services until July 31, 2009 in exchange for a payment to Ziff Davis Media in the amount of $2,500.00 per month due on or before the first day of each month for which Telephone Services are to be utilized by Enterprise Media.

8.    Ziff Davis Media hereby (a) acknowledges and agrees that money damages would not be a sufficient remedy for any breach of Sections 6 or 7 above and that Enterprise Media shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and (b) agrees to waive any requirement for the security or posting of any bond in connection with such remedy.   The foregoing remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to Enterprise Media.

9.    Releases.

     a.    As of the Approval Date, in consideration for the mutual covenants, promises and obligations contained herein, Enterprise Media, on behalf of itself, its Affiliates (defined below) and its and their respective past and present agents, controlling persons, shareholders, Affiliates, subsidiaries, related or parent entities, representatives, members, managers, officers, directors, employees, administrators, personal representatives, successors and assigns (collectively, the "Representatives"), hereby waives, releases and discharges the Ziff Davis Entities, their respective Affiliates (including, but not limited to, the Debtors), and each of their respective Representatives and attorneys from any and all claims, demands, causes of action, accounts, liens, debts and liabilities of any kind arising under or related to the Indemnity Escrow, the Enterprise Claim, the representations and warranties set forth in the Purchase and Sale Agreement or the terms of the Indemnity Escrow Agreement, whether in law or in equity, direct or indirect, known or unknown, previously asserted or not yet asserted, except for such rights and claims that are expressly granted, preserved, permitted or subsequently arise hereunder.   As used herein, "Affiliate" means, with respect to any person or entity, any other person or entity that

directly or indirectly controls, is controlled by, or is under common control with, such person or entity.

b.     As of the Approval Date, in consideration for the mutual covenants, promises and obligations contained herein, the Ziff Davis Entities, on behalf of themselves, their Affiliates and their respective Representatives, hereby waive, release and discharge Enterprise Media and its respective Affiliates, and each of their respective Representatives and attorneys from any and all claims, demands, causes of action, accounts, liens, debts and liabilities of any kind arising under or related to the Indemnity Escrow, the Enterprise Claim, the representations and warranties set forth in the Purchase and Sale Agreement or the terms of the Indemnity Escrow Agreement, whether in law or in equity, direct or indirect, known or unknown, previously asserted or not yet asserted, except for such rights and claims that are expressly granted, preserved, permitted or subsequently arise hereunder.

10.     <u>Bankruptcy Court Approval</u>.  This Agreement remains subject in all respects to approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, in the event that the Approval Order is not obtained within forty (40) days following the date hereof, (i) this Agreement and all of the obligations hereunder (other than the provisions of this sentence) shall automatically terminate and be of no further force or effect, (ii) the Parties shall be returned to the positions they occupied immediately before this Agreement was executed, and (iii) any of the Parties may notify the AAA that the Agreement has terminated and reinstate the Arbitration.

11.     <u>Notice</u>:  Any notice, request, demand or other communication given under this Agreement will be in writing and will be deemed sufficiently given:

a.     Upon the date received by the intended recipient if delivered by hand or overnight courier, provided confirmation of receipt is retained.

b.     If the sender so elects, effective three days following the date deposited in the United States mail, certified with return receipt requested, postage prepaid, addressed to the recipient as follows:

To the Ziff Davis Entities:          Ziff Davis Media Inc.
                                      28 East 28th Street
                                      New York, New York 10016
                                      Attn:  General Counsel
                                      Telephone:  (212) 503-3500

With a copy to:                       Winston & Strawn LLP
                                      35 West Wacker Drive
                                      Chicago, Illinois  60601
                                      Attn:  Daniel J. McGuire
                                      Telephone:  (312) 558-6154
                                      E-mail:  dmcguire@winston.com

| | |
|---|---|
| To Enterprise Media: | Enterprise Media Group, Inc.<br>c/o Insight Venture Management, L.L.C.<br>680 Fifth Avenue, 8th Floor<br>New York, New York 10019<br>Attn:  Lawrence Handen<br>Telephone:  (212) 230-9200<br>E-mail:  handen@insightpartners.com |
| With a copy to: | O'Melveny & Myers LLP<br>7 Times Square<br>New York, New York 10036<br>Attn:  William J. Sushon<br>Telephone:  (212) 326-2000<br>E-mail:  wsushon@omm.com |

c.      Either Party may advise the other of any change in address or designated person to receive such notice as provided above.

12.      <u>Severability</u>.   If any provision of this Agreement is adjudicated invalid and unenforceable by any court of competent jurisdiction or deemed by an applicable regulatory authority or governing body to be invalid and unenforceable under any statute, regulation, ordinance, executive agreement, or other rule of law, such provision will be deleted or modified, at the election of the Parties, but only to the extent necessary to comply with such ruling, statute, regulation, ordinance, agreement or rule, and the remaining provisions of this Agreement will remain in full force and effect, provided that such deletion or modification does not materially and adversely affect the rights or obligations of any party hereto.

13.      <u>Representations and Warranties</u>.

a.      Subject to entry of the Approval Order, the Ziff Davis Entities represent and warrant that (i) they have the power and authority to execute this Agreement, without obtaining the consent or approval of any other person or entity; and (ii) this Agreement has been duly authorized, executed and delivered by the Ziff Davis Entities and is enforceable against the Ziff Davis Entities in accordance with its terms.

b.      Enterprise Media represents and warrants that (i) it has the power and authority to execute this Agreement, without obtaining the consent or approval of any other person or entity; and (ii) this Agreement has been duly authorized, executed and delivered by Enterprise Media and is enforceable against Enterprise Media in accordance with its terms.

14.      <u>Choice of Law</u>.   This Agreement shall be governed by the internal laws of the State of New York and the applicable provisions of the Bankruptcy Code, and shall be construed and interpreted in accordance with the laws of the State of New York, notwithstanding its conflict of laws principles or any other rule, regulation or principle that would result in the application of any other state's law.

15.    <u>Authorization</u>.  Each individual signing this Agreement on behalf of any party represents and warrants that he/she has full authority to do so.

16.    <u>Enforcement</u>.  In the event that legal action is instituted between the Parties to enforce this Agreement, the prevailing party shall be entitled to recover from the losing party all costs and expenses of litigation, including without limitation, court costs and reasonable attorneys' fees.

17.    <u>Binding Nature</u>.  The Parties acknowledge that each and every covenant and agreement contained herein shall inure to the benefit of, and be binding upon, each of the Parties' agents, subsidiaries, employees, officers, directors, assigns and successors in interest.

18.    <u>Entire Agreement</u>.  The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior and contemporaneous agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Agreement.

19.    <u>Amendment</u>.  The Parties agree that this Agreement may not be amended, modified or varied in its terms by an oral agreement or representation or otherwise, except by an instrument in writing of subsequent date hereof executed by all of the Parties.

20.    <u>Waiver</u>.  The Parties agree that no breach of any provision hereof may be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

21.    <u>Third Parties</u>.  Nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the Parties, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party to any party to this Agreement, nor shall any provision give any third party any right of subrogation or action over or against any party to this Agreement.

22.    <u>Counterparts</u>.  The parties agree that this Agreement may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, and all such counterparts taken together shall constitute one and the same Agreement.  This Agreement may be signed and transmitted by electronic mail or facsimile, either of which shall be deemed to have the full force and effect as an original signature.

23.    <u>Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Agreement.  Each Party consents to the jurisdiction of the Bankruptcy Court to resolve any disputes or controversies between the Parties hereto arising from or related to this Agreement.  Any motion, application or other action or proceeding brought before the Bankruptcy Court to resolve a dispute arising from or related to this Agreement shall be brought on proper notice in accordance with the Bankruptcy Court's Order Establishing Certain Notice, Case Management, and Administrative Procedures entered March 10, 2008, relevant Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court.

24.    <u>Voluntary Nature</u>.  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Agreement with attorneys of its own choice as a

result of which the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Agreement; and (b) each Party signing this Agreement is entering this Agreement knowingly, voluntarily and of its own free will.

8

IN WITNESS WHEREOF, the undersigned have each caused this Agreement to be duly executed and delivered by their respective, duly authorized representatives as of the date first set forth above.

**THE ZIFF DAVIS ENTITIES:**

ZIFF DAVIS MEDIA INC., on its own behalf and on behalf of all of the other Ziff Davis Entities

By: _____

Name: _____

Title: _____

Date: _____

Authorized signatory for all of the Ziff Davis Entities

**ENTERPRISE MEDIA GROUP, INC.**

By: _____

Name: _____

Title: _____

Date: _____

## EXHIBIT A

Enterprise Claim Letters

## EXHIBIT B

Form of Joint Letter of Direction

CHI:2220971.11

_____ __, 2009

**_VIA HAND DELIVERY_**

Wells Fargo Bank, National Association          Wells Fargo Bank, National Association
45 Broadway                                     230 West Monroe Street
14th Floor                            Corporate Trust Department, 29th Floor
New York, NY  10006                             Chicago, IL  60606
Attn:  Robert Bilodeau                          Attn:  Timothy P. Martin

Re:    <u>Joint Letter of Direction from Enterprise Media Group, Inc. and Ziff Davis
Media Inc.</u>

Gentlemen:

Reference is hereby made to the Indemnity Escrow Agreement (the "<u>Escrow Agreement</u>") dated as of July 31, 2007 by and between Wells Fargo Bank , National Association ("<u>Escrow Agent</u>"), Enterprise Media Group, Inc. ("<u>Enterprise Media</u>") and Ziff Davis Media Inc. and certain of its affiliates (collectively, the "<u>Ziff Davis Entities</u>"); the Settlement Agreement (the "<u>Settlement Agreement</u>," a copy of which is attached hereto as **<u>Exhibit A</u>**) dated as of _____ __, 2009 by and between Enterprise Media and the Ziff Davis Entities; and the order (the "<u>Court Order</u>") entered by the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") on _____ ___, 2009 approving the Settlement Agreement (the "<u>Court Order</u>," a copy of which is attached hereto as **<u>Exhibit B</u>**).  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Escrow Agreement and the Settlement Agreement.

This joint letter of direction is given as of the _____ day of _____ 2009 by Enterprise Media and the Ziff Davis Entities to the Escrow Agent pursuant to the Indemnity Agreement, the Settlement Agreement and the Court Order.

Enterprise Media and Ziff Davis Media, through their authorized signatories identified on the signature pages hereto, hereby authorize and direct the Escrow Agent to distribute the funds held in the Indemnity Escrow as follows:  (i) $_____ shall be distributed from the Indemnity Escrow to Enterprise Media; (ii) Five Hundred Twenty Thousand Dollars ($520,000) of the funds in the Indemnity Escrow shall be distributed to Ziff Davis Media; and (iii) the remainder of the funds in the Indemnity Escrow shall be distributed to U.S. Bank National Association in its capacity as Collateral Trustee for distribution to holders of Senior Secured Note Claims and MHR Note Claims.

**ZIFF DAVIS MEDIA INC.**

By: _____

Name: _____

Title: _____

Date: _____


**ENTERPRISE MEDIA GROUP, INC.**

By: _____

Name: _____

Title: _____

Date: _____

## EXHIBIT C

Joint Letter of Termination

[OMM Letterhead]

_____ __, 2009

<u>***VIA FACSIMILE AND OVERNIGHT MAIL***</u>

Ms. Janice Jary Antone
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island  02914

**Re:    Enterprise Media Group, Inc. v. Ziff Davis Media Inc.
AAA Case No. 13 489 Y 01879 08**

Dear Ms. Antone,

This letter shall confirm that the parties have settled the above-referenced matter and agree that the arbitration proceeding shall be terminated with prejudice forthwith. Each party shall bear its own costs and fees including the fees of the arbitrator appointed by such party.

O'MELVENY & MYERS LLP                WINSTON & STRAWN LLP


By: _____            By: _____
William J. Sushon                    Anthony DiSarro
Judd B. Grossman                     Lina M. Viviano
7 Times Square                       200 Park Avenue
New York, New York 10036             New York, New York  10036-6710

*Attorneys for Claimant Enterprise*        *Attorneys for Respondent Ziff Davis Media Inc.*
*Media Group, Inc.*

## ANNEX I

1. Use of the New York and San Francisco Phone Services and Fiber Connection for the period commencing on 4/1/09 and ending on 7/31/09.

2. For the period commencing on 4/1/09 and ending on 7/31/09, use of the Nortel PBX located in the basement of 28 E. 28th Street, New York, New York 10016, currently in use by Ziff Davis Media and their divested properties still residing in the building (including Enterprise Media), and the following services related thereto:
   a. Maintenance of desktop digital handsets in good working condition.
   b. Maintenance of building riser wiring and other structured cabling from the handset to the PBX in the basement.
   c. Maintenance of voice circuits from the PBX to the Public Switched Telephone Network.
   d. Maintenance of the PBX itself.
   e. Reliable routing of inbound and outbound calls to and from the Public Switched Telephone Network.
   f. Assign extension phone numbers from a contiguous range of numbers.
   g. Provision of reliable, redundant voice circuit connections to the telecommunications carrier.
   h. Coordinate telecommunication circuit changes with the telecommunications carrier.
   i. Installation of phone extensions to the desktop, moves and changes when necessary.
   j. Installation of analog (fax) lines where requested.
   k. Timely communication of phone service interruptions including a description of the problem and estimated time to resolution.
   l. Prior communication of scheduled phone service interruptions one week before the event.

3. Ziff Davis Media shall provide Enterprise Media with the contiguous range of phone numbers, and shall:  (i) provide Enterprise Media with written consent to the transition of the number block; and (ii) respond to a designated Enterprise Media employee's reasonable questions regarding the telecom transition for a reasonable period following the completion of the transactions contemplated by this Agreement.

4. Continued use of the fiber connection from the basement at 28 E. 28th Street, New York, New York 10016 up to the 12th floor Enterprise Media office space.

# **EXHIBIT B**

Proposed Order

CHI:2228937.3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| Ziff Davis Media Inc., *et al.*,[1] | ) | Case No. 08-10768 (BRL) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER APPROVING THE SETTLEMENT BETWEEN THE REORGANIZED DEBTORS AND ENTERPRISE MEDIA GROUP, INC.

Upon the motion (the "Motion") of the above-captioned reorganized debtors (collectively, the "Reorganized Debtors") seeking entry of an order (this "Order") approving the Settlement between the Reorganized Debtors and Enterprise Media Group, Inc.;[2] it appearing that the relief requested in the Motion is in the best interests of the Reorganized Debtors and their estates, their creditors and other parties in interest; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; due and proper notice of the Motion having been given; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, the Motion is granted; and it is further

ORDERED, the Settlement is approved and the Reorganized Debtors are hereby authorized to enter into the Settlement Agreement and to execute and deliver any documents necessary to effectuate the Settlement Agreement; and it is further

---

[1]    The Reorganized Debtors in these cases are:  Ziff Davis Media Inc.; Ziff Davis Holdings Inc.; Ziff Davis Internet Inc.; Ziff Davis Publishing Inc.; and Ziff Davis Publishing Holdings Inc.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

ORDERED, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

CHI:2228937.3